Adam Hosmer-Henner, Esq. (NSBN 12779)
Jane Susskind, Esq. (NSBN 15099)
Katrina Weil, Esq. (NSBN 16152)
**McDONALD CARANO LLP**
100 West Liberty Street, 10th Floor
Reno, Nevada 89501
(775) 788-2000
ahosmerhenner@mcdonaldcarano.com
jsusskind@mcdonaldcarano.com
kweil@mcdonaldcarano.com

James J. Oh, Esq. (*pro hac vice* forthcoming)
Kathleen Barrett, Esq. (*pro hac vice* forthcoming)
Lydia Pincsak, Esq. (*pro hac vice* forthcoming)
**EPSTEIN BECKER GREEN, P.C.**
227 W. Monroe, Suite 3250
Chicago, IL 60606
(312) 499-1470
joh@egblaw.com
kbarrett@egblaw.com
lpincsak@egblaw.com

Robert E. Wanerman, Esq. (*pro hac vice* forthcoming)
**EPSTEIN BECKER GREEN, P.C.**
1227 25th Street, N.W., 7th Floor
Washington, DC 20037
(202) 861-1885
rwanerman@ebglaw.com

*Attorneys for Plaintiff Hometown Health Plan, Inc.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \* \* \*

| | |
|---|---|
| HOMETOWN HEALTH PLAN, INC., a Nevada non-profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>XAVIER BECERRA, in his official capacity as Secretary, United States Department of Health and Human Services; and CHIQUITA BROOKS-LASURE, in her official capacity as Administrator, Centers for Medicare and Medicaid Services,<br><br>Defendants. | **Case No:**<br><br><br>**COMPLAINT FOR JUDICIAL REVIEW AND DECLARATORY AND INJUNCTIVE RELIEF UNDER THE MEDICARE ACT** |

FIRM:64158100v1

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

Plaintiff Hometown Health Plan, Inc. ("Hometown Health"), submits this Complaint for Injunctive and Declaratory Relief ("Complaint") against Defendants Xavier Becerra, Secretary of the United States Department of Health and Human Services, in his official capacity, and Chiquita Brooks-LaSure, Administrator of the Centers for Medicare and Medicaid Services Health Resources Services Administration, in her official capacity, (collectively, "Defendants") based on the following allegations.

### INTRODUCTION

1. This action seeks an injunction against Defendants because they did not follow the text of their own regulations in calculating a "Star Rating" that determines whether Hometown Health will receive almost $22 million in a Quality Bonus payment ("QBP") that funds benefits offered to the almost twenty-thousand members of Hometown Health's Medicare Advantage plans ("MAPs"). Instead of following the text of their own regulations, Defendants, without proper notice to Hometown Health, used a methodology not codified in the text of the regulations to calculate scores on individual quality measures that comprise an overall Star Rating. Reliance on this unlawful methodology resulted in lower scores on five measures than would have been the case had Defendants calculated Hometown Health's scores consistent with their regulations. These unfair lower scores on five individual measures[1] resulted in Hometown Health's overall 2024 Star Rating being lowered from 4 in 2023 to 3.5 in 2024. An overall Star Rating of 4 is required to qualify for a QBP, which, based on a Centers for Medicare and Medicaid Services ("CMS") formula, would amount to almost $22,000,000 paid to Hometown Health in 2025. Hometown Health has received Star Ratings of 4 or higher and been paid QBPs every year but one since 2012 and for the last four years in a row. The QBPs have funded benefits of each of Hometown Health's six MAPS, including copayments, max out-of-pocket amounts, and

---

[1] For example, on one measure, Hometown Health's raw score *improved* 14%, but CMS gave Hometown Health a *lower* Star Rating on this measure.

supplemental benefits, such as vision, hearing, and dental care, health club memberships, a rewards program, and transportation to doctors' offices.

2. The harm that will result to Hometown Health and its members as a result of the unlawful methodology used to calculate its 2024 Star Rating is irreparable, significant, and cascading. Without the QBP, Hometown Health will be unable to fund and will have to cut benefits that help enrollees stay healthy and avoid unnecessary and costly health care services such as emergency room visits and hospitalizations. The loss of the QBP also will increase overall cost of care for Hometown Health members in the form of higher copayments for routine visits, hospital care, prescriptions, and other services. In short, the health of the 19,191 members' lives that Hometown Health manages will suffer if injunctive relief is not granted.

3. In addition, CMS publishes Star Ratings of each MAP on its website in a list that ranks MAPs by Star Rating and overall cost. The lower a plan's score, the lower it is on the list. CMS's reliance on an unauthorized methodology to calculate Hometown Health's 2024 Star Rating puts Hometown Health at an unfair competitive disadvantage. CMS steers shoppers for an MAP to plans rated 4 stars or above:

> We highlighted the percentage of plans that are ranked four stars or higher based on the Medicare Star Rating system. All Medicare Advantage plans and Medicare Part D drug plans are assigned an annual star rating by the Centers for Medicare & Medicaid Services (CMS). One-star plans are determined to be lowest quality, and plans rated four stars or higher are considered "highly-rated" plans.

*Comparing Medicare Advantage Across States in 2024*, Medicare Advantage (Oct. 20, 2023), https://www.medicareadvantage.com/resources/best-states-for-medicare. The lower 2024 rating and cutting of benefits will cause members to leave for other MAPs, irreparably damage Hometown Health's ability to attract new members, and jeopardize the long-term strength and survival of Hometown Health's MAPs.

4. The deadline for Hometown Health to submit its 2025 Medicare Advantage ("MA") bid to CMS is June 3, 2024. In order to know what it can put into the 73,000+ data fields that comprise the bid, including whether it can offer and pay for benefits, Hometown Health needs to know by no later than May 6 (four weeks before the deadline) whether CMS's wrongful Star

Rating and denial of a QBP to Hometown Health will be enjoined. An order directing CMS to follow its own regulations and recalculate Hometown Health's Star Rating according to the plain language of the text of the actual regulations would not be burdensome to CMS and could be executed quickly. The balance of harms tilts decidedly in Hometown Health's favor.

5. Hometown Health thus respectfully and ***urgently*** requests that the Court schedule this matter for a preliminary injunction hearing in April.

**PARTIES**

6. Hometown Health, headquartered in Reno, is Northern Nevada's only locally owned, not-for-profit health insurance provider. Hometown Health is owned by Renown Health.

7. Defendant Becerra is the Secretary of the Department of Health and Human Services ("HHS"), the federal agency that oversees the Centers for Medicare and Medicaid Services ("CMS"). Secretary Becerra is named in his official capacity. References to the Secretary are meant to refer to him, to his subordinates, and to his official predecessors or successors as the context requires.

8. Defendant Chiquita Brooks-LaSure is the Administrator of CMS, the agency responsible for the administration of the Medicare program, including the Star Ratings for MAPs. References to the Administrator are meant to refer to her, to her subordinates, and to her official predecessors or successors as the context requires. Medicare is health insurance for people 65 or older or the disabled.

**JURISDICTION AND VENUE**

9. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331. This action arises under the Medicare Act, 42 U.S.C. 1395 *et seq*.; the Administrative Procedure Act, 5 U.S.C. §§702 and 706; the Declaratory Judgment Act §§ 2201-02; and Federal Rule of Civil Procedure 65.

10. Venue is proper in this Court under 28 U.S.C. § 1391(e) because this is an action against officers and agencies of the United States, and Hometown Health has its principal place of business in the Northern Division of this District.

**FACTUAL ALLEGATIONS**

### Hometown Health's Medicare Advantage Plan

11. Renown Health was founded as Washoe Health System in 1862. In 1984, Washoe Health System transitioned to a private not-for-profit health network. Washoe Health System launched its not-for-profit health insurance division, Hometown Health, in 1988. Hometown Health earned a Medicare contract with CMS to offer an MAP in 1996. In 2006, Washoe Health System rebranded to Renown Health. Hometown Health offers six different MAPs to residents of Washoe, Storey, Clark, and Nye counties and Carson City, that fall under the brand name Senior Care Plus.

12. Individuals who are eligible for Medicare benefits may elect to receive those benefits from a private payor, known as a Medicare Advantage Plan ("MAP") or Medicare Part C plan, under Part C of Medicare. The MAP bears the financial risk of furnishing benefits and receives a fixed per member per month payment ("PMPM") from CMS. 42 U.S.C. §§ 1395w-21–1395w-29.

13. An MAP must cover all items and services covered under the traditional Medicare program set out in Parts A and B of Medicare, and typically offers enrollees benefits and lower out-of-pocket costs that reduce the cost of health care for those beneficiaries. Most MAPs include prescription drug coverage.

14. Hometown Health currently has 19,191 members who have enrolled in one of Hometown Health's Senior Care Plus plans.

### Hometown Health's 2024 Star Rating

15. The Affordable Care Act ("ACA") first introduced QBPs based on a five-star quality rating system to Medicare Advantage Organizations ("MAOs") in 2012. The intent of this system was to provide information to Medicare beneficiaries who elect to receive their health insurance through an MAP. Star Ratings are published by CMS and posted on its website. Through its Medicare Plan Finder tool, MAPs are listed in rank order, with the highest plans listed first to guide beneficiaries toward the highest-ranked plans. Plans with Star Ratings below 3 stars may be excluded from the Medicare Plan Finder tool.

16. Should a plan not receive a 4.0 or above Star Rating, it loses its eligibility for a QBP.

17. In the preamble of its 2018 Final Rule, CMS stated that "[t]he goals of the Star Ratings are to display quality information on Medicare Plan Finder to help beneficiaries, families, and caregivers make informed choices by being able to consider a plan's quality, cost, and coverage; to provide information for public accountability; to incentivize quality improvement; to provide information to oversee and monitor quality; *and to accurately measure and calculate scores and stars to reflect true performance*." 83 Fed. Reg. 16519 (emphasis added). Therefore, in the 2018 Final Rule, CMS announced that it was "codifying the existing Star Ratings system for the MA and Part D programs." *Id.* CMS's rationale was that "codifying the Star Ratings methodology will provide plans with more stability to plan multi-year initiatives . . . [f]urther, by adopting and codifying the rules that govern the Star Ratings system, we are demonstrating *a commitment to transparency and predictability for the rules in the system* so as to foster investment." *Id*. at 16519–20 (emphasis added).

18. CMS further committed in the 2018 Final Rule that "[s]ubstantive changes (for example, *major changes to methodology* or specifications) to existing measures *would be proposed and finalized through rulemaking*." 83 Federal Register 16534 (emphasis added).

19. CMS must use clear and unambiguous calculations of Star Ratings. 42 C.F.R. §§ 422.162, 422.166, and 423.186. Those calculations are based on a variety of performance measures published by CMS. Those measures include, but are not limited to, data about the timeliness of plan determinations, access to a call center, and other customer service metrics.

20. The elements of the Star Ratings fall into two groups. The first group, taken from the Consumer Assessment of Healthcare Providers and Systems surveys ("CAHPS") capture consumer feedback on plan performance. The second group, non-CAHPS data, comes from other sources, including the Health Effectiveness Data and Information Set ("HEDIS") and Medicare Parts C and D reporting requirements.

21. Each CAHPS and non-CAHPS measure is given a score. CMS then determines a "cut point" for scores assigned to a particular Star Rating from 1 to 5.

22. Unfortunately, CMS was not transparent in how it calculated Hometown Health's 2024 Star Rating. Nor did CMS's 2024 Star Rating of Hometown Health accurately measure and rate Hometown Health's true performance. CMS made a substantive change to the methodology of calculating 2024 Star Ratings that it did not *finalize* through rulemaking. CMS calculated Hometown Health's 2024 Star Rating based *not* on *actual* performance data, but instead based on *re-run, simulated, artificial data.* CMS has never published a proposed rule authorizing it to use re-run, simulated, or artificial data to calculate Star Ratings, and has never adopted a final rule after receiving comments that authorized in finalized regulation the use of re-run, simulated, or artificial data to calculate Star Ratings.

23. CMS admitted as much on March 29, 2024, in two cross motions for summary judgment it filed in two separate lawsuits that two other MAPs filed against CMS challenging their 2024 Star Ratings. In both of those pleadings, CMS stated: "CMS chose again in the Final Rule, as it had in the Proposed Rule, not to unnecessarily complicate the regulation found in the Code of Federal Regulations by codifying the methodological step that the prior year's cut points would be rerun." *SCAN Health Plan v. Department of Health and Human Services, et al.*, Case No. 1:23-cv-3910, ECF # 24 (D.D.C. March 29, 2024); *see also Elevance Health v. Becerra, et al.*, Case No. 1:23-cv-3902, ECF # 17 (D.D.C. March 29, 2024).

24. A Star Rating encompasses a four-year cycle as follows:

| Performance Year | Reporting Year | Star Rating Year | QBP Payment Year |
|---|---|---|---|

25. Raw data on individual plan performance measures (*see, e.g.*, Medicare Final Rule April 16, 2018, 83 Fed. Reg. 16538–16543 (listing 34 performance measures)) is collected during the calendar year of the Performance Year. Thus, the data on Hometown Health's MAPs were generated in Performance Year 2022 for the 2024 Star Rating that Hometown Health is challenging here.

26. CMS collects and analyzes the raw data during the first half of the ReportingYear, *i.e.*, here, 2023, the calendar year after the Performance Year. Raw data performance is shared with plans in August of the Reporting Year (here, 2023) in a "First Plan Preview."

27. CMS then calculates the "cut points" for each measure – like cutoffs to receive an A grade, or B grade, or C grade on a midterm exam – based on aggregated 2022 performance data collected by all MAPs and calculated by CMS. Next, CMS has limited how much the cut points can fluctuate from year to year, called a "guardrail." 42 C.F.R. § 422.162(a). The regulations at 42 C.F.R. §§ 422.166 (Part C) and 423.186 (Part D) state:

> Effective for the Star Ratings issued in October 2022 and subsequent years, CMS *will add a guardrail* so that the measure-threshold-specific cut points for non-CAHPS measures do not increase or decrease more than the value of the cap from 1 year to the next. *The cap is equal to 5 percentage points* for measures having a 0 to 100 scale (*absolute percentage cap*) or *5 percent of the restricted range* for measures not having a 0 to 100 scale (*restricted range cap*). New measures that have been in the Part C and D Star Rating program for 3 years or less use the hierarchal clustering methodology with mean resampling with no guardrail for the first 3 years in the program.

(Emphasis added).

28. This regulatory text makes no mention of basing the current year's cut points on simulated or artificial data from the prior year. Instead, it imposes an "absolute" requirement that cut points not change more than 5% "from 1 year to the next."

29. Hometown Health learned that its 2024 overall Star Rating was a 3.5 on or about September 13, 2023.

**CMS's Improper Calculations of Hometown Health's Scores on Five Individual Measures Dropped Hometown Health's Overall Star Rating from 4 to 3.5, Disqualifying Hometown Health from Receiving a $22 Million QBP.**

30. Savannah Gonsalves is Hometown Health's Director of Quality Improvement and has led that department since late 2018. Among her responsibilities are managing Hometown Health's Star Ratings process each year, which requires her to understand the individual quality measures that comprise a Star Rating, coordinate quality initiatives within Hometown Health to achieve high scores on those measures, and shepherd Hometown Health's MA plan through the Star Rating process each year. Since Ms. Gonsalves has been head of the Quality Department, Hometown Health has received a 4 or higher Star Rating and qualified for a QBP.

31. When Ms. Gonsalves learned what Hometown Health's 2024 Star Rating was, she was perplexed. She was fully expecting another 4 Star Rating based on her actual knowledge of

Hometown Health's performance during the Performance Year in question, 2022. She therefore did a deep dive into Hometown Health's individual score on each measure and discovered five measures where the scores did not align with the score that she expected on these measures.

32. In subsequent correspondence with CMS, Ms. Gonsalves learned why Hometown Health's scores on these measures did not align with the scores she expected. First, CMS admitted that it based Hometown Health's 2024 Star Rating not on actual Performance Year data or on actual cut points from the year before, but on Performance Year data that it had "*rerun.*"

33. Second, CMS admitted that it created the 2024 cut points based on this newly-fabricated data set. In a September 21, 2023, email to Ms. Gonsalves from "PartC&DStarRatings@cms.hhs.gov," CMS stated that "[t]hese *rerun* Star Ratings cut points, not the 2023 cut points previously published in the Medicare 2023 Part C & D Star Ratings Technical Notes, serve as the basis for the guardrails for the 2024 Star Ratings." (Italics in original). Translating that sentence into plain English, CMS is stating that it fabricated a new set of *artificial* 2023 cut points, and then applied a +/- 5% guardrail to these artificial cut points to determine what Hometown Health's Star Ratings were for 2024. Nowhere in the text of the applicable regulations is CMS given the authority to calculate Star Ratings using this methodology.

34. The table below shows what Hometown Health's Star Ratings should have been on these five individual measures had CMS followed its own regulations and applied "caps" or guardrails properly and consistent with the text of its own regulations: (*full table is on following page*).

///
///
///
///
///
///
///
///

| A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|
| Performance Measure | 2023 Raw Score and Star Rating | 2023 Published Actual Cutoff | 2024 Raw Score and Star Rating Given by CMS on This Measure | 2024 Cutoffs Based on Artificial Data | % Change from 2023 Actual Cut Points to 2024 Artificial Cut Points | What 2024 Cutoffs Should Have Been if Based on 2023 Actual Data | What Star Rating Should Have Been Had Actual Data Been Used |
| Complaints About The Heath Plan Part C | Raw Score: 0.15 | 5 Stars: 0.19 | Raw Score: 0.17 | 5 Stars: 0.14 | 5 Stars: 0.19 to 0.14 = 26.32% | 5 Stars: 0.1805 | 5— because raw score of 0.17 is lower than 0.1805 |
| | Star Rating: 5 | 4 Stars: 0.5 | Star Rating: 4 | 4 Stars: 0.32 | 4 Stars: 0.5 to 0.32 = 36% | 4 Stars: 0.475 | |
| Plan Makes Timely Appeal Decisions | Raw Score: 94 | 4 Stars: 85 | Raw Score: 92 | 4 Stars: 94 | 4 Stars: 85 to 94 = 9% | 4 Stars: 90 | 4— because raw score of 92 is above 90 |
| | Star Rating: 4 | 3 Stars: 75 | Star Rating: 3 | 3 Stars: 88 | 3 Stars: 75 to 88 = 13% | 3 Stars: 80 | |
| Call Center – Foreign Language Interpreter and TTY Availability (Part D) | Raw Score: 78 | 4 Stars: 80 | Raw Score: 92 | 4 Stars: 96 | 4 Stars: 80 to 96 = 16% | 4 Stars: 85 | 4— because raw score of 92 is above 85 |
| | Star Rating: 3 | 3 Stars: 64 | Star Rating: 3 | 3 Stars: 88 | 3 Stars: 64 to 88 = 24% | 3 Stars: 69 | |
| Complaints About Drug Plan Part D | Raw Score: 0.15 | 5 Stars: 0.19 | Raw Score: 0.17 | 5 Stars: 0.32 | 5 Stars: 0.19 to 0.14 = 26.32% | 5 Stars: 0.1805 | 5— because raw score of 0.17 is below 0.1805 |
| | Star Rating: 5 | 4 Stars: 0.5 | Star Rating: 4 | 4 Stars: 0.14 | 4 Stars: 0.5 to 0.32 = 36% | 4 Stars: 0.475 | |
| Drug Price Accuracy | Raw Score: 97 | 4 Stars: 93 | Raw Score: 95 | 4 Stars: 98 | 4 Stars: 93 to 98 = 5 | 4 Stars: 98 | 3— because raw score of 95 is above 91 and below 98 |
| | Star Rating: 5 | 3 Stars: 86 | Star Rating: 2 | 3 Stars: 96 | 3 Stars: 86 to 96 = 10% | 3 Stars: 91 | |
| | | 2 Stars: 72 | | 2 Stars: 94 | 2 Stars: 72 to 94 = 22% | 2 Stars: 77 | |

35. Had Hometown Health received the score that Ms. Gonsalves expected on these five measures, Hometown Health's raw overall 2024 score would have been 3.84. Overall scores of 3.75 or above are rounded up to 4. CMS's reliance on artificial data to calculate Hometown Health's scores instead resulted in a raw overall score of 3.66 for Hometown Health; this was rounded down by CMS to 3.5, disqualifying Hometown Health from receiving a QBP in 2025.

36. The table below, which is taken from an online manual that provides "Instructions For Completing The Medicare Advantage Bid Pricing Tools For Contract Year 2024," outlines the QBP percentage and rebate percentage for various QBP Star Ratings that were published for contract year 2024 that are applicable today:

| QBP star rating | CY2024 QBP Percentage | CY2024 Rebate Percentage |
|---|---|---|
| 4.5+ | 5.0% | 70% |
| 4.0 | 5.0% | 65% |
| 3.5 | 0.0% | 65% |
| 3.0 | 0.0% | 50% |
| < 3.0 | 0.0% | 50% |

*See Bid Forms & Instructions*, CMS https://www.cms.gov/medicare/health-plans/medicareadvtgspecratestats/bid-forms-instructions/2024 (last visited Mar. 28, 2024) ("Bid Instruction Manual").

37. Based on a CMS algorithm, Washoe County is a "double bonus" county, defined as a county with low traditional Medicare spending and high Medicare Advantage enrollment. A double bonus county means that a Star Rating of 4.0 qualifies Hometown Health's plans for a double bonus of 10%, which, in dollars, amounts to a $22 million loss in revenue if CMS's incorrect Star Rating is not reversed.

38. On September 15, 2023, Ms. Gonsalves sent email correspondence to CMS contesting its 2024 Star Rating. (*See* Exhibit A to Declaration of Savannah Gonsalves, attached to Plaintiff's Emergency Motion For Preliminary Injunction, to be filed shortly hereafter).

///

///

///

39. On September 21, 2023, Hometown Health received an email from "PartC&DStarRatings@cms.hhs.gov," disagreeing with Hometown Health's analysis as to why its Star Rating was improperly calculated.

40. On September 26, 2023, Hometown Health asked CMS to postpone publicly posting the 2024 Star Ratings until their issues were resolved because "not to do so could have irreparable reputational damage to impacted plans."

41. In an October 10, 2023, email, PartC&DstarRatings@cms.hhs.gov stated: "[w]e are unable to delay the postings of the Star Ratings. . . . The 2025 quality bonus payment appeals process for 2024 Star Ratings will start in November with the posting of the preliminary quality bonus payment ratings in HPMS."

42. CMS published 2024 Star Ratings on the CMS Plan Finder website on October 15, 2023.

43. Since then, Hometown Health has pursued without success CMS's quality bonus appeals process for its 2024 Star Ratings, including asking for an informal hearing for a CMS Hearing Officer. On March 20, 2024, the CMS Director of the Division of Consumer Assessment and Plan Performance submitted to the Hearing Officer a "Memorandum in Support of Denial of Hometown Health's (Contract H2960) Appeal of its 2025 Quality Bonus Payment Rating," arguing that "Hometown Health's 2024 overall Star Rating was calculated correctly" and that the Hearing Officer does not even have the authority to grant the relief that Hometown Health was requesting.

44. Hometown Health fully expects that the CMS Hearing Officer will decide that she lacks authority to entertain Hometown Health's appeal. Thus, Hometown Health has no choice but to file this lawsuit because it has no other forum in which to seek and obtain relief from CMS's illegal conduct.

### The Health of Members and the Financial Health of Hometown Health's MAPs Will Be Irreparably Harmed

45. A primary reason why those eligible for Medicare choose a Part C MAP instead of traditional Medicare fee-for-service coverage is the benefits that MAPs offer that government-

provided Medicare does not. In order to stay competitive with other MAPs, Hometown Health must offer benefits that its competitor plans offer. With, however, a Star Rating of 3.5 and the loss of the $22 million QBP, Hometown Health faces the likelihood of cutting benefits offered by its MAPs when it submits its 2025 MA bid to CMS by June 3, 2024.

46. For example, for the last two years, Hometown Health has offered a rewards program that rewards members when they get a physical, or a mammogram, or a colonoscopy ("Rewards Program"), *i.e.*, the Rewards Program is aimed at incentivizing members to engage in preventative maintenance of their health. The Rewards Program is at high risk of being cut because Hometown Health will not be able to fund it. Another benefit that is likely to be cut is the transportation benefit, which will pay for an Uber for a member who does not drive or who does not have a car to visit his or her doctor. Receiving a QBP each year has allowed Hometown Health to bring down to *zero* the cost to members of many generic drugs such as daily blood pressure or cholesterol medications. Hometown Health may now need to charge its members for these life-saving medications with the loss of the QBP.

47. When benefits get taken away, or when a charge is added for generic drugs that did not cost anything, members will get angry and leave the Plan or no longer take the recommended prescribed medication.

48. Without the transportation benefit, and without incentives to get preventative health screenings, members will make less frequent trips to see their doctor for routine check-ups or to get preventative screenings. A major policy goal of the entire Medicare system as a whole is to improve the overall health of America's seniors and disabled through the provision of coordinated, preventative care. CMS's utilization of artificial data to calculate Hometown Health's 2024 Star Rating undermines that goal for the 19,000+ members of Hometown Health's MAPs in the Reno/Sparks/Carson City area.

49. A loss of $22 million in revenue will irreparably harm Hometown Health. CMS's determination that Hometown Health does not qualify for a QBP in 2025 arrives at a critical, sensitive moment. Hometown Health experienced significant financial losses in 2022 and 2023 due in large part to increased health care claims arising from the COVID-19 pandemic. In 2024,

Hometown Health is still projecting a loss, but not nearly on the scale that it experienced in 2022 and 2023. Despite these losses, Hometown Health continued its focus on providing high quality ("highly rated") MAPs to its members. Indeed, most of Hometown Health's scores on the individual measures that went into its overall 2024 Star Rating improved from the previous year. On one of the five measures in question in this case, Hometown Health's raw score improved from a 78 to a 92. Yet, incredulously, its Star Rating for this measure *went down*, from a 4 to a 3.

50. A $22 million loss will draw heightened scrutiny from the Nevada Department of Insurance ("DOI"). The DOI monitors every health insurance plan's "risk based capital" or "RBC," which is essentially how much excess capital (*i.e.*, cash) the plan has in excess of liabilities in order to handle potential risks to the health plan. If Hometown Health reports an eight-figure loss, the Nevada DOI may take administrative action against Hometown Health or impose additional capital requirements at a time when it will be hard-pressed to comply.

51. A $22 million loss will harm Hometown Health's ability to compete in the marketplace. Not receiving a QBP will cause Hometown Health to cut benefits and increase cost shares, which will make its MAPs less attractive to those needing Medicare coverage and will cause Hometown Health not only to lose current members but hurt Hometown Health's ability to attract new members. The market for Medicare is growing in the Reno/Sparks/Carson City area as the population of those eligible for Medicare has increased in Washoe and neighboring counties. Hometown Health, however, has not been able to match the growth in the market with a concomitant growth in its membership due to the stiff competition. Losing the QBP will further hinder Hometown Health's ability to compete with the large, national insurers.

52. Hometown Health is Northern Nevada's only *not-for-profit* health care insurer. Such a huge financial loss will hinder Hometown Health's ability to reinvest in the community. Hometown Health wants to enhance the health of the current and future members they serve through increased service, benefits, and access to health care. Its ability to do so will be harmed if CMS's arbitrary and capricious action is not reversed.

///

///

**This Is an Emergency, as Hometown Health's 2025 MA Bid Is Due June 3, 2024**

53. Per 42 C.F.R. § 422.254(a), "[n]ot later than the first Monday in June, each MA organization must submit to CMS an aggregate monthly bid for each MA plan . . . the organization intends to offer in the upcoming year in the service area . . . ."

54. Hometown Health has six MAPs. CMS's Bid Instruction Manual states that "Medicare Advantage Organizations (MAOs) must submit a separate bid to the Centers for Medicare & Medicaid Services (CMS) for each non-segmented plan or each segment of a segmented plan that they intend to offer under the MA program." Bid Instruction Manual, p. 5 of 155. "MAOs must submit the information via the CMS Health Plan Management System (HPMS) in the CMS-approved electronic format." *Id.*

55. Appendix B of the Bid Instruction Manual consists of ten single-spaced pages of "documentation requirements [that] apply to all bids." *Id.*, pp. 92–101. For each of Hometown Health's six MAPs, it must complete a separate Excel workbook and enter electronically over 12,000 data fields into the CMS HPMS. If changes to benefits or revenue are made, each of these 12,000+ items must be checked before submission.

56. Each bid also must include an actuarial certification. The actuarial certification must include an attestation that the bid(s) are in compliance with the applicable laws, rules, bid instructions, and current CMS guidance; that the data and assumptions used in the development of the bid(s) are reasonable for the plan's benefit package (PBP); and that the bid(s) were prepared in compliance with the current standards of practice, as promulgated by the Actuarial Standards Board of the American Academy of Actuaries.

57. In addition to the actuary providing an actuarial certification, a Hometown Health officer also must attest that the information contained in each bid is true and accurate.

58. In order for Hometown Health and its actuary to be able to submit timely bids that are true and accurate, Hometown Health must know by May 6 whether it will qualify for a QBP and can include a QBP in its bid, or whether it must cut some benefits, which, in turn will affect the 73,000+ data fields that Hometown Health must enter electronically into CMS's electronic bid system for all six plans.

59. Hometown Health *urgently* needs relief quickly from this Court so that it knows what it can submit in its MA bids to CMS by June 3.

### FIRST CAUSE OF ACTION

**(Violation of Administrative Procedure Act – Failure to Follow Its Own Regulation)**

60. Hometown Health incorporates Paragraphs 1 through 59 of this Complaint as if set forth fully herein.

61. The APA, 5 U.S.C. §§ 551-559 and 701-706, provides for judicial review to "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action . . . ." 5 U.S.C. § 702. Under 5 U.S.C. § 706(2)(A), an agency action can be held unlawful and set aside if it is "not in accordance with law."

62. Under 42 C.F.R. § 422.166(a)(2), when calculating a Star Rating, CMS is required to apply a 5-percentage-point guardrail to measure cut points so that those cut points "do not increase or decrease more than the value of the cap from [one] year to the next."

63. For Hometown Health's 2024 Star Ratings, CMS re-ran the actual 2023 Star rating cut points that were used to determine eligibility for a QBP payable in 2024 by, *inter alia*, removing outlier data, and then CMS applied guardrails to those artificial cut points to establish the cut points for 2024 Star Ratings. The text of 42 C.F.R. § 422.166(a)(2) does not say that CMS can do this.

64. As a result of application of 5% guardrails to these artificial cut points, many cut points that determine eligibility for a QBP increased by more than 5 percentage points from 2023 to 2024—in violation of the plain text of 42 C.F.R. § 422.166(a)(2).

65. This unauthorized methodology adversely affected Hometown Health's scores on five individual measures and had the effect of reducing Hometown Health's overall score below the threshold to receive an overall 4 Star Rating for 2024. Had CMS complied with the actual text of the applicable regulation, Hometown Health would have received a higher Star Rating on these individual measures, a higher overall score, a 2024 Star Rating of 4, and qualified for a 2025 QBP.

66. Because CMS has acted contrary to law and failed to follow its own regulations, Hometown Health has suffered and will continue to suffer irreparable harm unless injunctive relief is granted.

67. The public interest strongly favors injunctive relief, as the health of 19,000+ members of Hometown Health's MAPs will suffer.

68. Hometown Health therefore respectfully requests the relief as prayed for below.

## SECOND CAUSE OF ACTION

**(Violation of Administrative Procedure Act – Arbitrary and Capricious Agency Action)**

69. Hometown Health incorporates Paragraphs 1 through 68 of this Complaint as if set forth fully herein.

70. Under 5 U.S.C. § 706(2)(A), an agency action can be held unlawful and set aside if it is arbitrary or capricious.

71. CMS's actions as applied to Plaintiffs were arbitrary and capricious because they were contrary to the unambiguous, plain language of 42 C.F.R. § 422.166(a)(2) that cut points "do not increase or decrease more than the value of the cap from [one] year to the next. The cap is equal to 5 percentage points."

72. Hometown Health therefore respectfully requests the relief as prayed for below.

## THIRD CAUSE OF ACTION

**(Violation of Medicare Act, 42 U.S.C. § 1395hh(a)(2) – Change to Substantive Legal Standard Without Proper Notice and Comment)**

73. Hometown Health incorporates Paragraphs 1-72 of this Complaint as if set forth fully herein.

74. The Medicare Act describes when notice and comment is necessary:

> No rule, requirement, or other statement of policy (other than a national coverage determination) that establishes or changes a substantive legal standard governing the scope of benefits, the payment for services, or the eligibility of individuals, entities, or organizations to furnish or receive services or benefits under this subchapter shall take effect unless it is promulgated by the Secretary by regulation under paragraph (1).

42 U.S.C. § 1395hh(a)(2).

75. In this case, all four requirements are met. CMS *changed* a *requirement* of applying a *substantive legal standard, i.e.*, *5% guardrails*, to determine Star Ratings and eligibility for *payment for services, i.e.*, a *Quality Bonus Payment*. This was a substantive change from the previous year of applying 5% guardrails to actual cut points to applying 5% guardrails to artificial cut points derived from artificial data. This resulted in Hometown Health's ineligibility for a $22,000,000 bonus payable in 2025.

76. While CMS has discussed re-running data in preambles and a technical manual, those subregulatory discussions cannot change a substantive legal standard set forth in finalized regulatory text.

77. CMS has admitted that it has never inserted into the text of 42 C.F.R. § 166(a)(2)(i) that guardrails would be applied to re-run, artificial data regardless of whether the result was more than "a [5%] increase or decrease . . . than the value of the cap from [one] year to the next." Thus, CMS's statement in its Memorandum in Support of Denial that it "followed the methodology *codified* at §§ 422.160–422.166 . . . to calculate the ratings" for Hometown Health is demonstrably false.

78. Hometown Health therefore respectfully requests the relief as prayed for below.

## **FOURTH CAUSE OF ACTION**

### **(Declaratory Judgment)**

79. Hometown Health incorporates the allegations set forth in Paragraphs 1 through 78 of this Complaint as if fully set forth herein.

80. Hometown Health seeks a declaration, pursuant to 28 U.S.C. § 2201, that CMS's calculation of Hometown Health's 2024 Star Rating was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law.  5 U.S.C. § 706(2)(A).

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Hometown Health requests the following relief:

81. The scheduling of a preliminary injunction hearing in April of 2024;

82. After that hearing, an injunction against Defendants that:

1        a.      Vacates Hometown Health's final 2024 Star Rating issued in September 2023;

        b.      Enjoins Defendants from basing Hometown Health's 2025 Quality Bonus Payment on the Star Rating that was calculated utilizing re-run, artificial data;

        c.      Orders Defendants to recalculate Hometown Health's 2024 Star Rating on the five individual measures discussed above by utilizing Hometown Health's 2022 performance data on these five measures and applying 5% guardrails to the actual 2023 cut points published in the 2023 Part C & D Star Ratings Technical Notes;

        d.      Orders Defendants to determine Hometown Health's eligibility for a QBP based on the recalculations of these five individual measures;

        e.      Orders Defendants to publish on its website that Hometown Health's 2024 Star Rating has been recalculated from 3.5 to 4; and

        f.      Orders Defendants to place Hometown Health on the list of MAPs on CMS's website consistent with a 4 Star Rating.

83.    A declaratory judgment that Defendants' calculation of Hometown Health's 2024 Star Rating by applying 5% guardrails to re-run, artificial data was arbitrary and capricious, contrary to law, and violated § 1395hh(a)(2) of the Medicare Act.

84.    An award of Hometown Health's reasonable attorney's fees and costs, as permitted by law; and

85.    An award of other further relief as this Court deems just and proper.

Dated this 1st day of April, 2024.      McDONALD CARANO, LLP

By */s/ Adam Hosmer-Henner*
   Adam Hosmer-Henner (NSBN 12779)
   Jane Susskind (NSBN 15099)
   Katrina Weil (NSBN 16152)
   McDONALD CARANO LLP
   100 West Liberty Street, 10th Floor
   Reno, NV 89501
   ahosmerhenner@mcdonaldcarano.com
   (775) 788-2000



|   |   |
|---|---|
| 1 | James J. Oh (*pro hac vice* forthcoming) |
| 2 | Kathleen Barrett (*pro hac vice* forthcoming) |
|   | Lydia Pincsak (*pro hac vice* forthcoming) |
| 3 | EPSTEIN BECKER GREEN, P.C. |
|   | 227 W. Monroe, Suite 3250 |
| 4 | Chicago, IL 60606 |
|   | joh@ebglaw.com |
| 5 | (312) 499-1470 |

Robert E. Wanerman (*pro hac vice* forthcoming)
EPSTEIN BECKER GREEN, P.C.
1227 25th Street, N.W., 7th Floor
Washington DC 20037
rwanerman@ebglaw.com
(202) 861-1885

*Attorneys for Plaintiff Hometown Health*